**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DEANNA M. MATSKO,**

                                        **Plaintiff,**

          **vs.**                                                      **5:18-CV-00857**
                                                                       **(MAD/TWD)**

**THE STATE OF NEW YORK, THE NEW YORK**
**STATE GAMING COMMISSION, and TIMOTHY**
**SAFIN,**

                                        **Defendants.**
_____

**APPEARANCES:**                                  **OF COUNSEL:**

**OFFICE OF DOUGLAS W. DRAZEN**          **DOUGLAS W. DRAZEN, ESQ.**
2-8 Hawley Street, Suite 111
Binghamton, New York 13901
Attorney for Plaintiff

**OFFICE OF THE NEW YORK STATE**          **RYAN W. HICKEY, ESQ.**
**ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorney for Defendants The State of New
York and The New York State Gaming
Commission

**BARCLAY DAMON LLP**                     **EDWARD G. MELVIN, ESQ.**
Barclay Damon Tower                        **ROSS M. GREENKY, ESQ.**
125 East Jefferson Street
Syracuse, New York 13202
Attorneys for Defendant Timothy Safin

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff Deanna M. Matsko commenced this action on July 23, 2018, asserting

discrimination and retaliation claims under Title VII of the United States Code ("Title VII"), the

Americans with Disabilities Act ("ADA"), and the New York State Human Rights Law ("NYSHRL"), against Defendants State of New York, New York State Gaming Commission ("the Defendant Commission"), and Timothy Safin ("Defendant Safin").  *See* Dkt. No. 1.  On October 19, 2018, Plaintiff amended her complaint to assert, against all Defendants, six causes of action: (1) discrimination on the basis of sex in violation of Title VII; (2) retaliation on the basis of sex in violation of Title VII; (3) retaliation on the basis of race in violation of Title VII; (4) discrimination and retaliation in violation of the ADA; (5) discrimination on the basis of sex in violation of the NYSHRL; and (6) retaliation for her discrimination complaints in violation of the NYSHRL.  *See* Dkt. No. 20.

Currently before the Court are Defendant New York State and Defendant Commission's ("the State Defendants") motion for summary judgment, *see* Dkt. No. 69; Defendant Safin's motion for summary judgment, *see* Dkt. No. 70, and Plaintiff's cross motion for leave to file a second amended complaint, *see* Dkt. No. 75.  For the reasons that follow, Defendants' motions are granted and Plaintiff's cross motion is denied.

## II. BACKGROUND

Defendant Commission is a New York State executive agency that regulates all aspects of legal gaming activity in the State of New York.  *See* Dkt. No. 75-2 at ¶¶ 1-2.  Prior to the events underlying this action, Defendant Safin was employed by the Defendant Commission as a Supervising Gaming Inspector at Turning Stone Casino, *see id.* at ¶ 10, and Plaintiff was employed as a supervisor of Turning Stone Casino's thirteen retail stores, *see id.* at ¶ 6.  In 2016, Defendant Safin, who was previously acquainted with Plaintiff, encountered her in one of the Turning Stone Casino retail stores.  *See id.* at ¶ 8.  During this approximately fifteen minute encounter, Defendant Safin spoke to Plaintiff about a job opportunity with the Defendant

Commission as a gaming inspector and exchanged personal e-mail and cell phone information with her. *See id.* at ¶¶ 12, 15-16. At the end of the encounter, Defendant Safin commented to Plaintiff that he looked forward to having her as his mistress. *See id.* at ¶ 17. Plaintiff did not respond to the comment.

Plaintiff thereafter determined that she wanted to apply for the gaming inspector position and sent her resume to Defendant Safin at his personal e-mail address. *See id.* at ¶ 20. Defendant Safin provided feedback on her resume and told her that, since the decision to hire her was his, no one would see her resume. *See id.* at ¶ 22. Plaintiff thereafter altered her resume, apparently at Defendant Safin's prompting, to falsely state that she had an associate degree in business. *See id.*[1] Plaintiff then completed the application forms with the assistance of Defendant Safin—again falsely stating that she had an associate degree in business—and submitted the form, along with her resume and a personal history disclosure form, to the Defendant Commission for the gaming inspector position. *See id.* at ¶ 25. The completed application that Plaintiff signed contained an applicant affirmation that stated, "I affirm that all statements made by me on this form, including attached papers, are true, complete and correct to the best of my knowledge. I understand all statements made by me in connection with this application are subject to investigation and verification and that falsification or omission of information is cause for the revocation of offer of employment or dismissal from employment." *Id.* at ¶ 27.

Between the submission of her application and the subsequent interview, Plaintiff and Defendant Safin exchanged a number of sexually explicit text messages. *See id.* at ¶¶ 37-40. Plaintiff was then interviewed by Defendant Safin and his supervisor, after which Plaintiff was

---

[1] Plaintiff has a diploma in massage therapy but she does not otherwise have any formal degrees. *See* Dkt. No. 75-2 at ¶ 14.

recommended for the position. *See id.* at ¶¶ 33-34.[2]  In accordance with its policy and standard practices, the Defendant Commission's human resources department sent Plaintiff's personal history disclosure form to the New York State Police to conduct a background investigation. *See id.* at ¶¶ 40-41.  Meanwhile, Plaintiff was offered the position effective September 8, 2016, and required to complete a probationary period "of 26 to 52 weeks." *Id.* at ¶ 47.

Plaintiff received both job training and training on sexual harassment. *See id.* at ¶ 61.  At the time of her hire, the Defendant Commission had in place a sexual harassment prevention policy, dated June 2016, that provided the following procedure for reporting sexual harassment: "[a]ny Commission employee who believes that [they] have been a victim of sexual harassment should promptly report it in confidence by using the Discrimination/Sexual Harassment Complaint Form and send it to: OGS Diversity and Equal Employment Office." Dkt. No. 69-25 at 2.  The policy also included the Diversity and Equal Employment Office's email address, phone number, and fax number. *See id.*  The June 2016 policy stated that complaints are sent to the Diversity and Equal Employment Office "to avoid a situation in which an employee is faced with complaining to the person, or a close associate of the person who would be the subject of the complaint." *Id.* at 4.  This policy was updated in November 2016 and—although the reporting procedure stayed the same—the latter statement had been omitted and the policy now provided that complaints could also "be made to a supervisor or manager." Dkt. No. 69-26 at 3.

Plaintiff was placed under the supervision of Defendant Safin.  In addition to scheduling, mandating overtime as needed, approving time off, and assigning tasks, Defendant Safin's duties

---

[2] Plaintiff was recommended for the position by Defendant Safin's supervisor and that recommendation was certified by the Defendant Commission's Executive Director. *See* Dkt. No. 75-2 at ¶¶ 33-34.  Defendant Safin had no independent authority to hire Plaintiff and was not a part of the approval process. *See id.* at ¶ 35.

included completing probation evaluation reports, including Plaintiff's. *See* Dkt. No. 75-2 at ¶ 70.

Defendant Safin did not have the authority to unilaterally complete and process a probation

evaluation report,[3] or to hire, promote, demote, transfer, discipline, or terminate Plaintiff. *See id.*

at ¶ 75. Defendant Safin, however, misled Plaintiff into thinking that he had such authority. *See*

*id.* at ¶ 76. He also frequently made sexually charged and/or suggestive comments to Plaintiff,

sent her sexually explicit texts and pictures of his genitals, and otherwise attempted to use his

position to manipulate her into a sexual relationship with him. *See id.* at ¶¶ 80-85.[4] Defendant

Safin also allegedly made a number of racist comments to Plaintiff concerning her child, who was

biracial. *See* Dkt. No. 75 at 7. Plaintiff did not report Defendant Safin at this time because she

was afraid of being fired. *See* Dkt. No. 75-2 at ¶ 87.

Between December 2016 and February 2017, it appears that Defendant Safin contacted

someone that he personally knew at the New York State Police to request a separate background

check on Plaintiff. *See* Dkt. No. 75 at 7. Defendant Safin was not authorized to make such a

request, and the Defendant Commission eventually ordered him to desist. *See* Dkt. No. 75-1 at

152-158. However, as of March 2017, the Defendant Commission had yet to receive the results of

its own background investigation request and so it made a request that the investigation be

expedited. *See* Dkt. No. 75-2 at ¶ 44.

Meanwhile, Defendant Safin went on medical leave and Plaintiff contacted his supervisor

to indicate that she was no longer comfortable working under Defendant Safin's supervision. *See*

---

[3] The probation reports had to be reviewed by Defendant Safin's supervisor before they were signed. *See* Dkt. No. 75-2 at ¶ 70.

[4] Plaintiff has alleged an extensive number of disturbing allegations concerning Defendant Safin's behavior while they were employed by the Defendant Commission, *see* Dkt. No. 75 at 1-27, but, for the sake of brevity, the Court omits them from this recitation of the undisputed facts.

*id.* at ¶¶ 91-92.  The supervisor referred Plaintiff to human resources and, on April 19, 2017,

Plaintiff indicated to human resources that she wanted to make a claim against Defendant Safin

for sexual harassment.  *See id.* at ¶ 102.  The Defendant Commission's associate director of human

resources promptly completed a sexual harassment complaint form on Plaintiff's behalf, attached

her notes on Plaintiff's allegations, and submitted the sexual harassment complaint to the

Diversity and Equal Employment Office.  *See id.* at ¶¶ 104-05.  After Plaintiff's sexual harassment

complaint was filed, Defendant Safin was not permitted to return to work and, five days later on

April 24, 2017, the Defendant Commission placed Defendant Safin on administrative leave.  *See*

*id.* at ¶ 108.  The Defendant Commission subsequently suspended him without pay and served

him with a notice of discipline seeking his termination.  *See id.* at ¶¶ 111-12.  In February 2018,

Defendant Safin resigned from his position.  *See id.* at ¶ 114.

     Plaintiff was also placed on administrative leave, with pay, in April 2017.  *See id.* at ¶ 116.

On May 9, 2017, the New York State Police provided the Defendant Commission with its report

of the results of its background investigation on Plaintiff.  *See id.* at ¶ 45.  Plaintiff resumed work

in May 2017, but had accrued forty nine absences by August 3, 2017.  *See id.* at ¶ 56.  Relying on

Civil Service Rule 4.5, the Defendant Commission extended Plaintiff's probationary period from

September 7, 2017 to October 26, 2017.  *See id.* at ¶¶ 56, 58.  Plaintiff's probationary period was

extended twice more—once in October 2017 and again in November 2017—for the same reason.

*See id.* at ¶ 57.

     During this time, Plaintiff submitted a reasonable accommodation request to the

Defendant Commission, stating that she was "being treated for anxiety and depression due to a

work related incident that involved [her] direct supervisor" and that her doctor recommended that

she "not work more than 8 [hours] a day, 5 days per week."  Dkt. No. 69-47 at 1.  The only

medical documentation provided in support of this application was a single sentence note from her doctor stating, in whole, that "[Plaintiff] should only work 8 hours per day and 5 days per week." Dkt. No. 69-48 at 1. The Defendant Commission did not directly deny this request, instead offering Plaintiff the following accommodation:

> As you know, the casinos are a 24/7 operation and require a Gaming Operations Inspector on-site at all times. We will not schedule you to work overtime, but you may be asked to come in early due to unforeseen circumstances. Also, you may be required to stay past the end of your shift if another inspector is not on-site. We will make every effort to get another inspector to the facility to relieve you as soon as possible, but you will be required to remain at the facility until another inspector arrives.

Dkt. No. 75-2 at ¶ 132. Plaintiff rejected this offer.

On July 17, 2017, Plaintiff filed a complaint with the New York State Division of Human Rights alleging that she was subjected to sexual harassment and discrimination by Defendant Safin, and retaliation by her co-workers and the Defendant Commission. *See* Dkt. No. 69-13 (hereinafter, "Matsko 1"). On October 30, 2017, Plaintiff filed a second complaint, alleging discrimination, denial of disability accommodation, and retaliation in connection with the extension of her probationary status. *See* Dkt. No. 69-14 (hereinafter, "Matsko 2"). In November 2017, three days before Plaintiff's probation was set to expire, the Defendant Commission terminated Plaintiff "based on material misstatements and omissions in her employment application and personal history disclosure form and Plaintiff's unsatisfactory time and attendance during Plaintiff's probationary period." Dkt. No. 75-2 at ¶ 137. On June 14, 2018, a right-to-sue letter for Matsko 2 was issued. *See* Dkt. No. 69-12 at 2. The right-to-sue letter for Matsko 1 was not issued until September 19, 2018, several months after the commencement of this action. *See id.* at 1.

The State Defendants now argue that summary judgment should be granted against Plaintiff in their favor because (1) Plaintiff did not administratively exhaust her Title VII and ADA claims; (2) Plaintiff cannot establish that the State Defendants violated Title VII or the ADA; and (3) Plaintiff's claims under the NYSHRL are barred by the Eleventh Amendment's grant of absolute immunity. *See* Dkt. Nos. 69-2, 80.  Defendant Safin argues that summary judgment should be granted against Plaintiff in his favor because (1) individuals are not subject to liability under Title VII and the ADA; and (2) he cannot be held liable under the NYSHRL as a matter of law. *See* Dkt. Nos. 70-1, 79.  Plaintiff opposes both motions,[5] and cross-moves for leave to file a second amended complaint under Rule 15(a) of the Federal Rules of Civil Procedure. *See* Dkt. No. 75-4.  The proposed complaint limits the existing causes of action to the State Defendants and adds three new causes of action against Defendant Safin for negligence, negligent infliction of emotional harm, and intentional infliction of emotional distress. *See* Dkt. No. 75 at 101-12.  All Defendants oppose the cross motion for leave to file a second amended complaint. *See* Dkt. Nos. 79, 80.

### III. DISCUSSION

**A.     Standard of Review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at

---

[5] Despite opposing both motions, Plaintiff's memorandum of law only partially addresses the State Defendants' motion and none of Defendant Safin's motion. *See* Dkt. No. 75-4.

36-37 (quotation and other citation omitted).  Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986).  In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.  *See Chambers*, 43 F.3d at 36 (citing *Anderson*, 477 U.S. at 255) (other citations omitted).  Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute.  *See Anderson*, 477 U.S. at 258.

The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  With respect to any issue on which the moving party does not bear the burden of proof, it may meet its burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case.  *See id.* at 325.  Once the movant meets this initial burden, the nonmoving party must demonstrate that there is a genuine unresolved issue for trial.  *See* Fed. R. Civ. P. 56(e).

**B.     Administrative Exhaustion**

The State Defendants first argue that any claims arising out of the events described in the Matsko 1 complaint are barred for failure to exhaust administrative remedies.  *See* Dkt. No. 80 at 11.  The State Defendants note that the right-to-sue letter in Matsko 1 was not issued until several months after this action was commenced, despite a right-to-sue letter being a prerequisite to the commencement of an action in federal court.  *See id.*  In opposition, Plaintiff argues that the State Defendants' argument is "meritless" because her amended complaint was timely filed with respect to the Matsko 1 right-to-sue letter.  Dkt. No. 75-4 at 5.

"Before an individual may bring a Title VII suit in federal court, the claims forming the basis of such a suit must first be presented in a complaint to the EEOC or the equivalent state

agency." *Williams v. New York City Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) (quoting 42

U.S.C. § 2000e-5 (2000)); *see also Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999)

(holding that EEOC exhaustion is required in ADA claims).  "In order to be timely," the

subsequent claim "must be filed in federal district court within 90 days of the claimant's receipt of

a right-to-sue letter." *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d

Cir. 2011) (citing 42 U.S.C. § 2000e–5(f)(1); 42 U.S.C. § 12117(a)).

The Second Circuit has held that "'the failure to exhaust administrative remedies,'"

including obtaining a right-to-sue letter, "'is a precondition to bringing a Title VII claim in federal

court, rather than a jurisdictional requirement,'" and therefore "'subject to waiver, estoppel, and

equitable tolling.'"  *Francis v. City of New York*, 235 F.3d 763, 767-68 (2d Cir. 2000) (quotations

and citations omitted).  Thus, the "sensible and fair rule," in situations where a federal action is

filed before the receipt of a right-to-sue letter, is that "the initial absence of the letter may be cured

by its subsequent issuance, so long as the case is in its early stages and the interim does not cause

unfair prejudice to the defendant."  *Bagley v. Yale U.*, 42 F. Supp. 3d 332, 347-49 (D. Conn.

2014) (citing *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000)); *see also Grey v.

Promenade Rehab. and Care Ctr.*, 145 Fed. Appx. 705, 706 (2d Cir. 2005) (noting, without

objection, that the district court had dismissed the underlying case "'without prejudice' to plaintiff

filing an amended complaint within thirty days indicating receipt of the necessary right-to-sue

letter"); *Johnson v. Xylem Inc.*, No. 1:19-CV-00130, 2020 WL 1963125, *2 (W.D.N.Y. Apr. 16,

2020).

The Court holds that, under these circumstances, the filing of Plaintiff's amended

complaint cured the initial absence of the Matsko 1 right-to-sue letter.  That letter was issued on

September 19, 2018, and the amended complaint was filed thirty-one days later on October 19,

2018—less than three months after commencement of the action. This case was thus still in its early stages when the right-to-sue letter for Matsko 1 was issued, and the Court does not perceive—nor do the State Defendants plausibly argue[6]—that they have suffered any unfair prejudice as a result of the three month delay before the amended complaint was filed.

Accordingly, the portion of the State Defendants' motion seeking dismissal of Plaintiff's Title VII and ADA claims for failure to exhaust administrative remedies is denied.

**C.      Plaintiff's Title VII Claims**

### 1. The Title VII Claims Against the State Defendants

The State Defendants argue that (1) Plaintiff cannot establish a *prima facie* case of sex discrimination, race discrimination, or retaliation under Title VII against the State Defendants; and (2) even if Plaintiff had established a *prima facie* case, the proof in the record established that the State Defendants' actions were taken for legitimate, non-discriminatory reasons. *See* Dkt. No. 69-2 at 6-13. In opposition, Plaintiff argues that the evidence in the record establishes a *prima facie* case of sex discrimination. *See* Dkt. No. 75-4 at 5-6.

"Title VII provides that it is 'an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or natural origin.'" *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 63 (1986) (quoting 42 U.S.C. § 2000e–3(a)). Discrimination claims under Title VII are analyzed according to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell*

---

[6] To the extent the State Defendants argue that the did not have adequate notice of the claims from Matsko 1, both the original complaint and the amended complaint make clear reference to Matsko 1 and the allegations therein as a basis for Plaintiff's claims in this action. *See* Dkt. No. 1 at ¶¶ 25, 30; Dkt. No. 20 at ¶¶ 25, 31.

*Douglas* framework, a plaintiff must first make a *prima facie* case of discrimination by showing that "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802).

"Once an employee makes a *prima facie* case of [discrimination], the burden shifts to the employer to give a legitimate, non-discriminatory reason for its actions." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014). If the employer is able to provide such a reason, "the burden shifts back to the plaintiff to show that the employer's explanation is a pretext for race discrimination." *See id.* To rebut the articulated justification for the adverse action, "the plaintiff must show 'both that the reason was false, and that discrimination was the real reason.'" *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 n.4 (1993) (internal quotations omitted). "'[T]he [employee's] admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the [employer's] employment decision was more likely than not based in whole or in part on discrimination.'" *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (quotation and citation omitted). This burden-shifting analysis informs the ultimate determination of whether the evidence reasonably supports an inference of the facts plaintiff must prove. *See James v. New York Racing Ass'n*, 233 F.3d 149, 157 (2d Cir. 2000).

### a. Sex Discrimination

The State Defendants argue that, because Defendant Safin was not Plaintiff's "supervisor" as defined in *Vance v. Ball State University*, 570 U.S. 421 (2013), his actions can only be imputed to the State Defendants if they were negligent in controlling work conditions. *See* Dkt. No. 69-2 at 8. The State Defendants further argue that, "[a]t all times relevant hereto, [they] exercised due

care in providing a workplace free from sexual harassment." *Id.* In opposition, Plaintiff does not contest the State Defendants' assertion that Defendant Safin was not her supervisor. *See* Dkt. No. 75-4 at 6-10.[7] Instead, Plaintiff argues that the evidence in the record establishes that there is a genuine issue of material fact with respect to whether the State Defendants were negligent in controlling work conditions. *See id.*

To demonstrate that an employer is negligent in controlling working conditions, "a plaintiff must adduce evidence 'that the employer failed to provide a reasonable avenue for complaint or that it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action.'" *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 92 (2d Cir. 2019) (quotation omitted); *see also Vance*, 570 U.S. at 448-49; *Lekettey v. City of New York*, 637 Fed. Appx. 659, 662 (2d Cir. 2016) (finding that the plaintiff alleged "no facts from which it can be plausibly inferred that defendants were negligent or unresponsive to her complaints about the workplace").

Here, the Court concludes no rational finder of fact could find that the State Defendants were negligent in controlling working conditions. First, there is no evidence to suggest that the State Defendants failed to provide a system for registering complaints. Both the June 2016 and November 2016 sexual harassment prevention policies clearly stated that sexual harassment could be reported by sending a "Discrimination/Sexual Harassment Complaint Form" to the OGS Diversity and Equal Employment Office, and included that office's e-mail address, phone number, and fax number. Dkt. No. 69-25 at 2 (the June 2016 policy); *see also* Dkt. No. 69-26 at 3 (the

---

[7] Plaintiff does suggest that the State Defendants "ought not be able to take refuge under *Vance*, when they left plaintiff unaware of the definition of supervisor for sexual harassment purposes." Dkt. No. 75-4 at 7. However, Plaintiff does not support this argument with any authority, and it is not clear to the Court why the failure to define "supervisor" in a sexual harassment policy should prohibit the application of *Vance*'s rule.

November 2016 policy).  This is, in fact, the method that was ultimately used to submit Plaintiff's complaint.  *See* Dkt. No. 75-2 at ¶ 105; Dkt. No. 69-43.  The November 2016 policy also provided that harassment reports could "be made to a supervisor or manager" as an alternative to filing a complaint with the Diversity and Equal Employment Office.  Dkt. No. 69-26 at 3.  Plaintiff argues that the complaint procedure was "deficient or unclear" because the November 2016 policy did not contain "any guidance or reassurance regarding bypassing harassing supervisors."  Dkt. No. 75-4 at 7-8.  Although the November 2016 policy did not explicitly provide the reassurance Plaintiff seeks, the June 2016 policy did clearly state that complaints are sent to the Diversity and Equal Employment Office "to avoid a situation in which an employee is faced with complaining to the person, or a close associate of the person who would be the subject of the complaint."  Dkt. No. 69-25 at 4.  Although Plaintiff argues that there is no proof that she read or understood either policy, she does admit that she underwent "some training for the [June] policy."  Dkt. No. 75-4 at 7; *see also* Dkt. No. 75-2 at ¶ 61; Dkt. No. 69-4 at 134.

Second, there is no evidence to suggest that the State Defendants failed to respond to Plaintiff's complaints.  Once Plaintiff made her complaint to the Associate Director of Human Resources at the Defendant Commission, the State Defendants rapidly proceeded to (1) complete a sexual harassment complaint form on Plaintiff's behalf and submit it to the Diversity and Equal Employment Office, *see* Dkt. No. 75-2 at ¶¶ 104-105; Dkt. No. 69-43; (2) place Plaintiff on administrative leave with pay, *see* Dkt. No. 75-2 at ¶ 116; (3) place Defendant Safin on administrative leave with pay, *see id.* at ¶ 108; (4) direct Defendant Safin to stay away from all work locations, not contact any other employees, and to keep Plaintiff's complaint confidential, *see id.*; (5) suspend Defendant Safin without pay, *see id.* at ¶ 111; and (6) ultimately issue Defendant Safin a notice of discipline seeking his termination, after which he resigned from his

position, *see id.* at ¶¶ 112, 114.  Indeed, after Plaintiff made her complaint to the Defendant

Commission, Plaintiff did not work with Safin ever again.  *See id.* at ¶ 115.

Third, there is no evidence to suggest that the State Defendants discouraged sexual

harassment complaints.  It is undisputed that the State Defendants held regular agency-wide

sexual harassment training programs, at least one of which Plaintiff attended, *see id.* at ¶ 61; had

policies in place that prohibited sexual harassment; and provided multiple ways to report sexual

harassment.  Although Plaintiff argues that the State Defendants "did nothing" when they were

notified that their training "apparently employed outdated and only semi-functioning videos," Dkt.

No. 75-4 at 8, that does not establish that the State Defendants had, in any way, "effectively

discouraged complaints from being filed." *Vance*, 570 U.S. at 449.

Finally, there is no evidence that, through the exercise of reasonable care, the State

Defendants should have known about the harassment before Plaintiff reported it.  Plaintiff argues

that the State Defendants "had reason to know Safin was harassing [P]laintiff months prior to

[her] complaint," because "[Defendant] Safin undertook unauthorized contact with the New York

State Police in an effort to cause [P]laintiff's termination in December 2016, and had to be

directed by [human resources] to desist from such action." Dkt. No. 75-4 at 9.  However, Plaintiff

does not explain how Defendant Safin's efforts to have Plaintiff's employment history

investigated—even if unauthorized—should have caused the State Defendants to be aware of

harassment that, at the time, had yet to be reported.

However, even if the Court were to find that Plaintiff had made out a *prima facie* case, the

State Defendants have met their burden of articulating a legitimate, non-discriminatory reason for

Plaintiff's termination.[8]  Defendants assert that Plaintiff was terminated "based on material misstatements and omissions in her employment application and personal history disclosure form and [her] unsatisfactory time and attendance during [her] probationary period."  Dkt. No. 75-2 at ¶ 137.  Because the State Defendants have provided a legitimate, non-discriminatory reason for Plaintiff's termination, the burden shifts back to Plaintiff to come forward with evidence that the State Defendants' proffered legitimate, non-discriminatory reasons are pretextual, thus supporting an inference that the real reason for Plaintiff's termination was discriminatory.

Here, Plaintiff has not provided any evidence that would permit a rational finder of fact to infer that her termination was more likely than not based in whole or in part on discrimination. Indeed, Plaintiff does not dispute that she made a material misstatement in her employment application, *see* Dkt. No. 69-4 at 59, 62-63; Dkt. No. 69-5 at 166; Dkt. No. 75-2 at ¶¶ 22-28, and admits that her time and attendance record "was not very good," Dkt. No. 69-6 at 93.  There is no evidence in the record indicating that the State Defendants ever took any action or communicated to Plaintiff in a way that could be construed as discriminatory.  Indeed, it was the State Defendants who completed and filed the original sexual harassment complaint form on Plaintiff's behalf, immediately placed Defendant Safin on administrative leave, and ultimately sought his termination.

Accordingly, the portion of the State Defendants' motion seeking summary judgment on

---

[8]  Contrary to Plaintiff's argument, the mere extension of her probation by the number of days she was absent from work, without any associated change in Plaintiff's job or working conditions, *see* Dkt. No. 69-15 at ¶¶ 53-54, 56, does not constitute an adverse employment action within the meaning of Title VII.  *See Robinson v. Dibble*, 613 Fed. Appx. 9, 12 (2d Cir. 2015) ("'To be "materially adverse" a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities'") (quotation omitted); *see also* 4 N.Y.C.R.R. § 4.5(g) ("The minimum and maximum periods of the probationary term of any employee shall be extended by the number of workdays of [their] absence").

Plaintiff's sex discrimination claim under Title VII is granted.

### b. Race Discrimination

The State Defendants argue that Plaintiff cannot establish that the circumstances of this case give rise to an inference of race discrimination "because there are no facts that show the State Defendants took any action against Plaintiff because she has a biracial child." Dkt. No. 69-2 at 9. Plaintiff does not address her race discrimination claim in her opposition to the State Defendants' motion.

Plaintiff's race discrimination claim appears to originate with her allegation that Defendant Safin made several verbal comments to her regarding her biracial child, including calling her a "n***** lover," calling the baby a "n***** baby," and stating that Plaintiff "might as well hang [the baby] in the front yard." Dkt. No. 20 at ¶ 17. "Verbal comments provide evidence of discriminatory intent when the plaintiff shows that 'a nexus exists between the allegedly discriminatory statements and a defendant's decision to take action against the plaintiff.'" *Phillips v. C. New York Psychiatric Ctr.*, No. 6:16-CV-0219, 2017 WL 2869938, *3 (N.D.N.Y. July 5, 2017) (quotation omitted). When determining whether such a nexus exists, courts in the Second Circuit examine whether the comments were: "(1) related to race, religion, and/or national origin; (2) 'proximate in time to the adverse employment decision'; (3) 'made by an individual with authority over the employment decision at issue'; and (4) 'related to the employment decision at issue.'" *Ahmad v. Nassau Health Care Corp.*, 234 F. Supp. 2d 185, 193 (E.D.N.Y. 2002), *aff'd* 71 Fed. Appx. 98 (2d Cir. 2003) (quotation omitted); *see also Phillips*, 2017 WL 2869938, at *3; *Vogel v. CA, Inc.*, 44 F. Supp. 3d 207, 223 (D. Conn. 2014), *aff'd in part and vacated in part*, 662 Fed. Appx. 72 (2d Cir. 2016); *Galimore v. City U. of New York Bronx Community College*, 641 F. Supp. 2d 269, 284 (S.D.N.Y. 2009); *Milton v. Buffalo Engr., P.C.*, No. 03-CV-472S, 2005 WL

2319833, *4 (W.D.N.Y. Sept. 22, 2005).

As shockingly reprehensible as these comments are, no rational finder of fact could find that Plaintiff has demonstrated the requisite nexus between Defendant Safin's statements and her ultimate termination by the State Defendants.  Although these comments are clearly related to race, there was a significant temporal gap of approximately nine months between the comments and Plaintiff's termination, *see* Dkt. No. 20 at ¶ 17*;* Dkt. No. 75-2 at ¶¶ 137, and they were made by Defendant Safin, who did not have the power to independently issue probation evaluation reports, discipline, or fire her.  *See* Dkt. No. 75-3 at ¶¶ 7-8.  Indeed, Defendant Safin had been placed on administrative leave by the State Defendants six months before Plaintiff's termination. *See* Dkt. No. 75-2 at ¶¶ 108, 137.  In other words, there is no evidence of any connection between these comments and Plaintiff's termination—indeed, the State Defendants were not even aware these comments were made until Plaintiff filed her complaints with the Division of Human Rights.  *See id.* at ¶ 139.

In any event, for the reasons noted in the previous section, Defendants have met their burden of articulating a legitimate, non-discriminatory reason for Plaintiff's termination, and Plaintiff has not provided any evidence that would permit a rational finder of fact to infer that her termination was more likely than not based in whole or in part on discrimination.

Accordingly, the portion of the State Defendants' motion seeking summary judgment on Plaintiff's race discrimination claim under Title VII is granted.

### c. Retaliation

The State Defendants argue that Plaintiff does not offer any evidence to rebut their legitimate and non-retaliatory reasons for her termination.  *See* Dkt. No. 69-2 at 10-13.  In opposition, Plaintiff argues that the evidence in the record has established that there is a genuine

issue of material fact with respect to whether the State Defendants terminated her[9] in retaliation for her sexual harassment complaint against Defendant Safin and her complaints with the Division of Human Rights. *See* Dkt. No. 75-4 at 10-14. Specifically, Plaintiff noted that she was terminated only one day after a conference in one of her Division of Human Rights actions and the amendment of her complaint in the other action. *See id.* at 13.

Title VII prohibits employers from discriminating against an employee who "has opposed any practice made an unlawful employment practice" or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). Courts analyze Title VII retaliation claims according to the burden-shifting framework set forth in *McDonnell Douglas*. *See Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003) (citation omitted). To make out a *prima facie* case of retaliation under Title VII, a plaintiff must adduce evidence sufficient to permit a rational trier of fact to find:

> "(1) that [the employee] engaged in protected participation or opposition under Title VII ... , (2) that the employer was aware of this activity, (3) that the employer took adverse action against the [employee], and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action."

*Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006) (quotation and other citations omitted). "Upon such a showing, the defendant must articulate

---

[9] As noted above, the extension of Plaintiff's probation by the State Defendants was not a retaliatory adverse action within the meaning of Title VII. Furthermore, "allowing [P]laintiff's co-workers to abuse her through the 'silent treatment'" or requiring her to work overtime when no other coverage was available, *see* Dkt. No. 75-4 at 11, also does not constitute an adverse action. *See Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 (2d Cir. 2011) (holding that "Title VII does not set forth 'a general civility code for the American workplace'" and that "[a]ctions that are 'trivial harms'—i.e., 'those petty slights or minor annoyances that often take place at work and that all employees experience'—are not materially adverse") (quoting *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

legitimate non-discriminatory reasons for its actions, whereupon the plaintiff bears the burden of showing that the defendant's explanations are pretext for the true discriminatory motive." *Holt v. KMI-Cont'l*, 95 F.3d 123, 130 (2d Cir. 1996).

Here, Plaintiff has not provided any evidence that would permit a rational finder of fact to infer that her termination was more likely than not retaliation for her engagement in protected activities. The State Defendants have articulated legitimate non-discriminatory reasons for Plaintiff's termination—material misstatements in her employment application and personal history disclosure form, and an unsatisfactory time and attendance record—and it is now Plaintiff's burden to show that these explanations are pretext for retaliatory motives. Even assuming that the temporal proximity between her termination and the events in her Division of Human Rights actions was adequate for an inference of retaliation for the purposes of her *prima facie* case, temporal proximity alone is insufficient to defeat summary judgment at the pretext stage. *See Vitti v. Macy's Inc.*, 758 Fed. Appx. 153, 158 (2d Cir. 2018) (citing *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010)). Plaintiff offers no additional circumstantial evidence beyond the temporal proximity of her termination that could create an issue of fact with respect to pretext; indeed, as noted above, Plaintiff does not even dispute the validity of the State Defendants' stated reasons for her termination. *See* Dkt. No. 69-4 at 59, 62-63, 93; Dkt. No. 69-5 at 166.

Accordingly, the portion of the State Defendants' motion seeking summary judgment on Plaintiff's retaliation claim under Title VII is granted.

### 2. The Title VII Claims Against Defendant Safin

Defendant Safin argues that Plaintiff's Title VII claims must be dismissed as against him because individuals are not subject to liability under Title VII. *See* Dkt. No. 70-1 at 4; *see also*

*Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) ("[I]ndividuals are not

subject to liability under Title VII").  Plaintiff appears to have abandoned this cause of action

inasmuch as she did not respond to this argument in her opposition papers and has removed the

Title VII claims against Defendant Safin in her proposed second amended complaint.  *See Jackson*

*v. Fed. Exp.*, 766 F.3d 189, 196 (2d Cir. 2014) ("Where abandonment by a counseled party is not

explicit but such an inference may be fairly drawn from the papers and circumstances viewed as a

whole, district courts may conclude that abandonment was intended").

Accordingly, the portion of Defendant Safin's motion seeking summary judgment on

Plaintiff's Title VII claims is granted.

**D.      Plaintiff's ADA Claims**

*1. The ADA Claim Against the State Defendants*

*a. Discrimination*

The State Defendants argue that Plaintiff cannot establish a *prima facie* case of

discrimination under the ADA because she was not disabled within the meaning of the statute

when she made her request for an accommodation on August 24, 2017, and cannot establish that

she was able to perform the essential functions of her job.  *See* Dkt. No. 69-2 at 13-16.  Plaintiff

does not address her ADA claim in her opposition brief.

The ADA prohibits "discrimination against a qualified individual on the basis of disability

in regard to job application procedures, the hiring, advancement, or discharge of employees,

employee compensation, job training, and other terms, conditions, and privileges of employment."

42 U.S.C. § 12112(a).  In order to make out a *prima facie* case of disability discrimination, the

plaintiff must demonstrate that

"(1) the defendant is covered by the ADA; (2) plaintiff suffers from

> or is regarded as suffering from a disability within the meaning of
> the ADA; (3) plaintiff was qualified to perform the essential
> functions of the job, with or without reasonable accommodation;
> and (4) plaintiff suffered an adverse employment action because of
> his disability or perceived disability."

*Kinneary v. City of New York*, 601 F.3d 151, 156 (2d Cir. 2010) (quoting *Capobianco v. City of*

*New York*, 422 F.3d 47, 56 (2d Cir. 2005)).  The ADA defines "disability" as: "(A) a physical or

mental impairment that substantially limits one or more of the major life activities of [an]

individual; (B) a record of such an impairment; or (C) being regarded as having such an

impairment[.]" 42 U.S.C. § 12102(1).

Here, a rational trier of fact could not find that Plaintiff was disabled within the meaning

of the ADA.  A review of the record reveals that Plaintiff's disability claim rests on her application

to the Defendant Commission for a reasonable accommodation.  In that application, Plaintiff

stated that she was "being treated for anxiety and depression due to a work related incident that

involved [her] direct supervisor" and that her doctor recommended that she "not work more than 8

[hours] a day, 5 days per week."  Dkt. No. 69-47 at 1.  The only medical documentation provided

in support of this application was a single sentence note from her doctor stating, in whole, that

"[Plaintiff] should only work 8 hours per day and 5 days per week."  Dkt. No. 69-48 at 1.  Plaintiff

does not claim, and there is no evidence in the record, that Plaintiff's anxiety or depression was a

mental impairment that substantially limited one or more of her major life activities.

Accordingly, the portion of the State Defendants' motion seeking summary judgment on

Plaintiff's ADA discrimination claim is granted.

### b. Retaliation

The State Defendants argue that, even assuming that Plaintiff established a *prima facie*

retaliation claim under the ADA, a rational trier of fact could not find that the State Defendants'

proffered legitimate non-discriminatory reasons were mere pretext for retaliatory motives. *See* Dkt. No. 69-2 at 16. As noted above, Plaintiff does not address her ADA claims in her opposition to this motion but, based on the amended complaint, it appears that Plaintiff is alleging that the denial of her accommodation request was retaliation for her sexual harassment complaint against Defendant Safin. *See* Dkt. No. 20 at ¶ 24

"'Claims for retaliation [under the ADA] are analyzed under the same burden-shifting framework established for Title VII cases.'" *Widomski v. State U. of New York (SUNY) at Orange*, 748 F.3d 471, 476 (2d Cir. 2014) (quoting *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)). Plaintiff's accommodation request was for a maximum work shift of eight hours a day, five days a week. *See* Dkt. No. 75-2 at ¶¶ 128-31. A review of the record reveals that the Defendant Commission did not wholly deny Plaintiff's accommodation request, instead offering her an alternative option: Plaintiff would not be scheduled to work overtime but "may be asked to come in early due to unforeseen circumstances" or asked "to stay past the end of [her] shift if another inspector is not on-site." *Id.* at ¶ 132. The proffered reason for this alternative accommodation was that "the casinos are a 24/7 operation and require a Gaming Operations Inspector on-site at all times." *Id.* Plaintiff offers no evidence to show that this explanation is a pretext for retaliatory motives, and the Court cannot identify any such evidence in the record.

Accordingly, the portion of the State Defendants' motion seeking summary judgment on Plaintiff's ADA retaliation claim is granted.

### 2. The ADA Claim Against Defendant Safin

Defendant Safin argues that Plaintiff's ADA claim must be dismissed as against him because individuals are not subject to liability under the ADA in the employment context. *See* Dkt. No. 70-1 at 4; *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) (holding that the ADA

"cannot provide for individual liability").  Plaintiff does not submit any opposition to this

argument and excludes this claim from her proposed second amended complaint.  Thus, as with

the Title VII claims, the Court finds that Plaintiff has abandoned her ADA claim against

Defendant Safin.

Accordingly, the portion of Defendant Safin's motion seeking summary judgment on

Plaintiff's ADA claim is granted.

**E.**     **Plaintiff's NYSHRL Claims**

*1. The NYSHRL Claim Against the State Defendants*

The State Defendants argue that the "Eleventh Amendment of the United States

Constitution protects a state," and state agencies, "against suits brought in federal court by citizens

of that state, regardless of the nature of the relief sought."  Dkt. No. 69-2 at 16.  The State

Defendants further argue that the NYSHRL "includes no waiver of the state's immunity to suit in

federal court."  *Id.*  In opposition, Plaintiff argues that (1) her "complaint invoked the Court's

jurisdiction to hear state law claims," and (2) "[p]rior to moving for dismissal for administrative

convenience, [D]efendant State [of New York]'s own human rights agency made a probable cause

finding on [P]laintiff's October 30, 2017 complaint against [the Defendants]."  Dkt. No. 75-4 at

14.

The Eleventh Amendment bars damages actions asserted by private persons against a State

in federal courts "absent waiver or valid abrogation" of the state's sovereign immunity.  *Virginia*

*Off. for Protec. and Advoc. v. Stewart*, 563 U.S. 247, 254 (2011).  "It is well settled that suits

against state agencies and state officers acting in their official capacities are functionally

equivalent to suits against the State."  *Salu v. Miranda*, 830 Fed. Appx. 341, 346–47 (2d Cir.

2020), *cert. denied* 141 S. Ct. 2643 (2021).  Courts in the Second Circuit have consistently held

that "New York State has not consented to be sued in federal court under the NYSHRL." *Baez v. New York*, 629 Fed. Appx. 116, 118 (2d Cir. 2015); *see Smith v. State Univ. of N.Y.*, No. 1:00-CV-1454, 2003 WL 1937208, *7 (N.D.N.Y. Apr. 23, 2003); *Winokur v. Off. of Ct. Admin.*, 190 F. Supp. 2d 444, 451 (E.D.N.Y. 2002).

Thus, the Eleventh Amendment bars this Court from adjudicating Plaintiff's NYSHRL claim against the State Defendants.  Although it is not abundantly clear to the Court how Plaintiff's arguments relate to this issue, to the extent Plaintiff is suggesting that supplemental jurisdiction under 28 U.S.C. § 1367(a) constitutes a congressional abrogation of the Eleventh Amendment, Plaintiff is incorrect.  *See Raygor v. Regents of U. of Minnesota*, 534 U.S. 533, 541 (2002) (holding that Section 1367(a) does not contain a clear statement of a congressional intent to abrogate state sovereign immunity); *see also Smith*, 2003 WL 1937208, at *7; *Winokur*, 190 F. Supp. 2d at 451.  To the extent Plaintiff argues that the issuance of right-to-sue letters constituted a waiver of immunity by the State, the language of the letters expressly limits their application to claims brought under "Title VII, the [ADA], the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act."  Dkt. No. 69-12 at 1-2.

Accordingly, the portion of the State Defendants' motion seeking summary judgment on Plaintiff's NYSHRL claim is granted.

### 2. The NYSHRL Claim Against Defendant Safin

Defendant Safin argues that he cannot be held personally liable under the NYSHRL because he cannot be deemed an employer under N.Y. Exec. Law § 296(1) or an aider and abettor under N.Y. Exec. Law § 296(6).  Plaintiff does not provide any opposition to Defendant Safin's argument and, as with her other claims against Defendant Safin, Plaintiff appears to have abandoned this claim.

An employee may be individually subject to suit under section 296(1) of the NYSHRL only where they are "'shown to have an[] ownership interest or [the] power to do more than carry out personnel decisions made by others.'" *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995) (quoting *Patrowich v. Chemical Bank*, 63 N.Y.2d 541, 542 (1984)). A co-worker may also be found individually liable under section 296(6) of the NYSHRL where they "aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so" and "actually participate in the conduct giving rise to a discrimination claim." *Feingold v. New York*, 366 F.3d 138, 157-58 (2d Cir. 2004).

No evidence has been presented that Defendant Safin had an ownership interest in the State Defendants or had the power to "hire or fire" Plaintiff. *Tomka*, 66 F.3d at 1317. Nor can Plaintiff state a claim of aiding or abetting against Defendant Safin where primary liability against the State Defendants cannot be established. *See Strauss v. New York State Dept. of Educ.*, 26 A.D.3d 67, 73 (3d Dep't 2005) ("Where no violation of the [NYSHRL] by another party has been established, we find that an individual employee cannot be held liable for aiding or abetting such a violation"); *see also Wiley v. Plattsburgh*, 407 F. Supp. 3d 119, 126 (N.D.N.Y. 2019) ("Given that the only primary NYSHRL claims are dismissed based on sovereign immunity, the individual defendants cannot be liable for aiding and abetting those claims under § 296(6)"); *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 253 (E.D.N.Y. 2015) (same); *Ren Yuan Deng v. N.Y. State Office of Mental Health*, No. 13-cv-6801, 2015 WL 221046, *5 (S.D.N.Y. Jan. 15, 2015) (same).

Accordingly, the portion of Defendant Safin's motion seeking summary judgment on Plaintiff's NYSHRL claim is granted.

**F.    Plaintiff's Cross Motion to Amend**

Plaintiff argues that leave to file a second amended complaint should be granted because

26

the proposed state law claims added against Defendant Safin "involve nothing about which [D]efendants are without notice" and involve "no change in [P]laintiff's factual allegations upon which the theories are based." Dkt. No. 75-4 at 15. Accordingly, Plaintiff asserts, "no significant delay should result" from granting leave, "nor expenditure of significant additional resources to conduct discovery and prepare for trial." *Id.* at 15-16. In opposition, Defendants argue that granting leave to amend under these circumstances would be "'especially prejudicial'" because the motion was filed solely in anticipation of an adverse ruling and Plaintiff has not demonstrated good cause for the delay. Dkt. No. 80 at 11 (quotation omitted); *see also* Dkt. No. 79 at 10-14.

Rule 15 of the Federal Rules of Civil Procedure provides that a court should "freely give leave" to amend the pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). "'A decision to grant or deny a motion to amend is within the sound discretion of the trial court.'" *Werking v. Andrews*, 526 Fed. Appx. 94, 95 (2d Cir. 2013). The Second Circuit has held that "'considerations of undue delay, bad faith, and prejudice to the opposing party [are] touchstones of a district court's discretionary authority to deny leave to amend.'" *Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 88 (2d Cir. 1998) (quotation omitted); *see also AEP Energy Services Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) ("'The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith'") (quotation omitted). Amendment is "especially prejudicial ... [when] discovery had already been completed and [non-movant] had already filed a motion for summary judgment.'" *Id.* (quoting *Ansam Associates v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985)); *see also Werking*, 526 Fed. Appx. at 96.

Allowing amendment at this juncture would be unduly prejudicial to Defendants. The deadline to amend pleadings expired nearly 30 months prior to this motion, discovery has been

complete for over a year, and all Defendants have now made motions for summary judgment.

Additionally, Plaintiff fails to offer any explanation whatsoever for why her new causes of action

were not raised earlier or included in her prior two complaints.  Notably, Plaintiff's memorandum

of law does not contain any arguments opposing Defendant Safin's motion for summary judgment,

and the proposed second amended complaint abandons the existing causes of action against

Defendant Safin in favor of three new causes of action against him.  It is evident that Plaintiff only

sought to leave amend the complaint once she received Defendants' motions and it became clear

that her original claims against Defendant Safin were without merit.  Granting leave to amend is

not appropriate where, as here, the motion is filed solely in anticipation of an adverse ruling.  *See*

*Cohen v. Am. Airlines, Inc.*, No. 19-CV-653, 2020 WL 6018781, *3-4 (E.D.N.Y. Sept. 9, 2020),

aff'd 13 F.4th 240 (2d Cir. 2021); *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 866 F. Supp.

2d 257, 272 (S.D.N.Y. 2012); *Mahar v. U.S. Xpress Enterprises, Inc.*, 688 F. Supp. 2d 95, 105

(N.D.N.Y. 2010); *Juncewicz v. Patton*, No. 01-CV-0519E, 2002 WL 31654957, *6 (W.D.N.Y.

Oct. 8, 2002).

      Accordingly, Plaintiff's cross motion for leave to amend the complaint is denied.

### IV. CONCLUSION

      After carefully reviewing the entire record in this matter, the parties' submissions and the

applicable law, and for the above-stated reasons, the Court hereby

      **ORDERS** that the State Defendants' motion for summary judgment (Dkt. No. 69) is

**GRANTED**; and the Court further

      **ORDERS** that Defendant Safin's motion for summary judgment (Dkt. No. 70) is

**GRANTED**; and the Court further

      **ORDERS** that Plaintiff's cross motion to amend the amended complaint (Dkt. No. 75) is

**DENIED**; and the Court further

     **ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

     **ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: January 14 , 2022
     Albany, New York

Mae A. D'Agostino
U.S. District Judge

29